[608 NYS2d 477]

ROBERT J. McDONALD, Appellant, v OLGA B. McDONALD, Also Known as OLGA BENITEZ, Respondent.

Second Department, February 22, 1994

---

## APPEARANCES OF COUNSEL

*Donna Harrison,* New York City, and *Cohen & Adolph,* New York City, for appellant. (One brief filed.)

*Mitchell N. Kay,* Garden City, and *Gassman & Fisher,* Garden City *(Stephen Gassman* and *Lois Jean Liberman* of counsel), for respondent.

## OPINION OF THE COURT

MANGANO, P. J.

The defendant wife in the instant action for a divorce and ancillary relief is the gestational, but not the genetic, mother

of two children born during the marriage.[1] The primary question to be resolved on the instant appeal is whether the defendant wife is the parent, i.e., the natural mother, of the children, for the purposes of resolving the issue of custody. In our view, this question must be answered in the affirmative.

## I

The plaintiff husband and the defendant wife were married on July 9, 1988. Because the wife was unable to conceive naturally, she conceived through a process known as "in vitro" fertilization, which was conducted in a laboratory affiliated with the Mount Sinai Hospital Fertility Clinic. Specifically, in the instant case, the sperm of the husband was mixed with the eggs of a female donor, and the fertilized eggs were then implanted in the wife's uterus. On February 3, 1991, the wife gave birth to the children, twin girls named Amanda and Alexandra.

The instant action for a divorce was commenced by the husband, wherein he sought, *inter alia,* a declaration that the children "be declared illegitimate * * * or, in the alternative, should such children be found to be genetically and legally plaintiff's, that custody be granted to plaintiff".

After joinder of issue, the husband subsequently moved, *inter alia,* for "immediate and sole custody of the infant issue", on the ground that as the "only genetic and natural parent available" to the children, his claim to custody was superior to that of the wife who was not the genetic mother by virtue of the fact that she utilized donor eggs to become pregnant. In support of his argument, the husband relied on a decision of a California trial court in *Johnson v Calvert* (Sup Ct, Orange County, Oct. 22, 1990, Parslow, J.).

After receiving the wife's opposition papers, the Supreme Court, Queens County (Graci, J.), *inter alia,* denied that branch of the husband's motion which was for custody of the children and granted that branch of the wife's cross motion which was for temporary custody, stating: "Defendant has been the custodial parent of the twin infants conceived during the parties' marriage since their birth on February 3, 1991 and is undisputedly their birth mother. At this juncture, the

1. For the purposes of our discussion, the genetic mother is the woman whose eggs are fertilized in the process of conception, while the gestational mother is the woman who carries the fertilized eggs in her uterus until birth.

infants are presumed the legitimate issue of the parties (cf. *Matter of Gordon,* 131 Misc 2d 823) and since plaintiff presents no factual allegations regarding defendant's capacity, ability or fitness to care for the children, their residential care shall continue to remain with the defendant pending resolution of the issue of custody at the trial of this matter".

## II

■ The issue of parental rights to a child born of a surrogacy arrangement received much attention in the case of *Matter of Baby M.* (109 NJ 396, 537 A2d 1227) which was decided by the Supreme Court of New Jersey in 1988. In that case, the husband and wife, Mr. and Mrs. Stern, desired, but could not have, their own children. Pursuant to an agreement, Mr. Stern's sperm fertilized a surrogate's (Mrs. Whitehead's) eggs. Mrs. Whitehead eventually delivered a baby, but reneged on the contract and claimed that she was the mother of the infant. After voiding the surrogacy contract as against public policy, the Supreme Court of New Jersey held that Mrs. Whitehead was the mother of the child and was entitled to visitation rights, even though custody was given to the father, Mr. Stern, based on a best interests of the child test. *Matter of Baby M. (supra)* is only a starting point for any resolution of the instant case, since in *Matter of Baby M. (supra),* the genetic mother and the gestational mother were one and the same, i.e., the surrogate, Mrs. Whitehead, used her own eggs and carried the fertilized eggs in her uterus for nine months.

The instant case is significantly different because here the "two aspects of the female role in reproduction", i.e., the genetic and the gestational, "were divided between two women" *(Johnson v Calvert,* 5 Cal 4th 84, 104, 851 P2d 776, 789 [Kennard, J., dissenting], *cert denied* — US —, 114 S Ct 206). The factual scenario in *Johnson v Calvert (supra)* represents one illustration of this phenomenon. In that case, a surrogate gestational mother, Ms. Johnson, carried a child to term on behalf of the two genetic parents, Mr. and Mrs. Calvert (i.e., Mr. Calvert's sperm was mixed with Mrs. Calvert's eggs and the fertilized eggs were implanted in the surrogate's uterus). Subsequently, the surrogate gestational mother sought to retain custody following the birth. The California trial court held that the surrogate gestational mother in that case had no custodial rights to the child and was of the general view that genetics were far more important

than the gestational environment of a child. However, while the trial court's decision in *Johnson v Calvert (supra),* upon which the husband relies, was ultimately affirmed by the Supreme Court of California in May 1993 *(see, Johnson v Calvert, supra),* subsequent to the perfection of the instant appeal, that affirmance was on somewhat different grounds than that advanced by the California trial court; indeed, the decision of the Supreme Court of California in *Johnson v Calvert (supra)* undermines the husband's argument in the instant case. The Supreme Court of California took the view, in contrast to the trial court, that both the gestational mother and the genetic mother in that case could arguably be considered the child's natural mother under California law, but that a choice had to be made between the two, since there could only be one natural mother. It held in favor of Mrs. Calvert, the genetic mother, relying on the following reasoning and test *(Johnson v Calvert,* 5 Cal 4th 84, 93, 851 P2d 776, 782, *supra):*

"Mark and Crispina [Calvert] are a couple who desired to have a child of their own genes but are physically unable to do so without the help of reproductive technology. They affirmatively intended the birth of the child, and took the steps necessary to effect in vitro fertilization. But for their acted-on intention, the child would not exist. Anna [Johnson] agreed to facilitate the procreation of Mark's and Crispina's child. The parties' aim was to bring Mark's and Crispina's child into the world, not for Mark and Crispina to donate a zygote to Anna. Crispina from the outset intended to be the child's mother * * * No reason appears why Anna's later change of heart should vitiate the determination that Crispina is the child's natural mother * * *

"We conclude that although the Act recognizes both genetic consanguinity and giving birth as means of establishing a mother and child relationship, when the two means do not coincide in one woman, she who intended to procreate the child—that is, she who intended to bring about the birth of a child that she intended to raise as her own—is the natural mother under California law"[2] *(see also, Matter of Andres A. v Judith N.,* 156 Misc 2d 65).

---

2. The dissenting Justice in the Supreme Court of California was of the view that the best interests of the child test had to be used to determine who was the legal mother. We do not find this argument persuasive and decline to follow it.

The Supreme Court of California then went on to indicate what would be its ruling in a true "egg donation" situation *(see, Johnson v Calvert,* 5 Cal 4th 84, 93, n 10, 851 P2d 776, 782, n 10, *supra),* which is precisely the situation involved in the case at bar: "Thus, under our analysis, in a true 'egg donation' situation, where a woman gestates and gives birth to a child formed from the egg of another woman with the intent to raise the child as her own, the birth mother is the natural mother under California law".

In the case at bar, we have a true "egg donation" situation, and we find the reasoning of the Supreme Court of California on this issue to be persuasive. Accordingly, the Supreme Court, Queens County, correctly held that in the instant "egg donation" case, the wife, who is the gestational mother, is the natural mother of the children, and is, under the circumstances, entitled to temporary custody of the children with visitation to the husband[3] *(see, Askinas v Askinas,* 155 AD2d 498).

We note that the papers submitted in support of the husband's motion and the wife's cross motion contain allegations concerning, *inter alia,* the wife's alleged misconduct in securing the plaintiff's consent to the in vitro fertilization,[4] as well as the husband's alleged misconduct toward the wife during her pregnancy. However, these allegations are not relevant to the issue of whether the wife is the natural mother of the children. Rather, these allegations should be fully explored before a final custody determination is made.

### III

We now turn to the husband's request to amend the birth certificates of the children to state that he is their father and to change their surname from Benitez to McDonald.

The record, including the results of probative genetic testing which were obtained after the husband commenced the instant action, indicates that he is the father of the children.

---

3. The parties had initially stipulated with respect to the husband's visitation, i.e., the husband would have visitation for three hours at the medical building where both parties conducted their medical practice. The Supreme Court, Queens County, in the order appealed from, granted the husband two extra hours of visitation per week during a weekend day at the infants' residence.

4. The plaintiff has commenced a separate tort action in New York County against his wife, the Mount Sinai Medical Center, Inc., and two physicians associated with that hospital.

Indeed, the wife does not seriously contest this fact. Moreover, "the interests of the infant[s] will be substantially promoted by the change" requested by the husband (Civil Rights Law § 63). As the court stated in *Matter of Petras* (123 Misc 2d 665, 672): "Deprivation of a father's surname is a serious and far-reaching action, more so in our American society with respect to a male child that normally carries a surname throughout life, but still an important basic right with respect to a daughter". Under these circumstances, this branch of the husband's motion, which merely reinforces the principle of legitimacy, should have been granted *(see,* Civil Rights Law §§ 60, 63; *Matter of Petras,* 123 Misc 2d 665, *supra; Matter of Cohan v Cunningham,* 104 AD2d 716).

## IV

■ We now turn to that branch of the husband's motion which seeks access to all of the medical records relating to the birth of the children.

It is well settled that in a matrimonial action, a party waives the physician-patient privilege concerning his or her mental or physical condition *(see,* CPLR 4504) by actively contesting custody *(see, Baecher v Baecher,* 58 AD2d 821; *People ex rel. Chitty v Fitzgerald,* 40 Misc 2d 966). However, "[t]here first must be a showing beyond 'mere conclusory statements' that resolution of the custody issue requires revelation of the protected material" *(Perry v Fiumano,* 61 AD2d 512, 519). Clearly, resolution of the custody issue in the instant case does not require revelation of the wife's medical records concerning her in vitro fertilization. Moreover, the record in the case at bar supports the wife's allegation that the husband, in this branch of his motion, is primarily interested in obtaining information regarding the egg donor, who is not a party to this action, and who is not seeking custody. Since any information regarding the egg donor is not relevant to the issue of custody in this case, that branch of the husband's motion was properly denied.

Accordingly, the order is modified to the extent indicated.

O'BRIEN, PIZZUTO and SANTUCCI, JJ., concur.

Ordered that the order is modified, on the law and as a matter of discretion, by deleting therefrom the provision which denied that branch of the plaintiff husband's motion which was to amend the birth certificates of the children of the marriage to state that he is their father and to change

their surnames from Benitez to McDonald, and by substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for issuance of an order pursuant to Civil Rights Law § 63, changing the surnames of the children from Benitez to McDonald and directing issuance of amended birth certificates pursuant to Public Health Law § 4138.