**In the Interest of O.G. M., a Child.**

**No. 01–98–0496–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 8, 1999.

Reginald Hirsch, Earle S. Lilly, Lynne Liberato, Patrice Pujol, Alene Ross Levy, Houston, for Appellant.

Roy W. Moore, Pamela E. George, Houston, for Appellee.

Panel consists of Justices MIRABAL, WILSON, and ANDELL.

## OPINION

ERIC ANDELL, Justice.

The trial court rendered summary judgment for the appellee, Donald McGill, on the issue of paternity of a child born through *in vitro* fertilization. In three points of error, the appellant, Mildred McGill Schmit, complains the trial court erred by denying her summary judgment motion, granting McGill's motion, and refusing to grant her attorney's fees. We affirm.

### Facts

Donald McGill (McGill) married Mildred McGill Schmit (Schmit) in 1976. After having three children, Schmit underwent tubal ligation. In 1994, Schmit and McGill sought the services of an assisted reproduction clinic in an effort to create another child through *in vitro* fertilization (IVF). This process involves the aspiration of ova or oocytes from the follicles of a woman's ovaries and fertilization of these ova in a laboratory procedure using the husband or donor's sperm. The resulting pre-embryos are transferred to the uterus of the potential mother, whereupon a viable pregnancy may occur. Because the IVF procedure frequently produces more pre-embryos than safely may be transferred at one time, the extra pre-embryos may be frozen for future use through a process called cryopreservation.

*During the couple's marriage, Schmit un-*successfully attempted the IVF procedure several times using her ova and McGill's sperm. The couple executed an informed consent form wherein they agreed that in the event of divorce, they would dispose of the pre-embryos according to both of their wishes. When Schmit and McGill were divorced in 1996, the clinic was storing four of their frozen pre-embryos. Their divorce decree did not address the disposition of the pre-embryos. Three months post-divorce, McGill accompanied Schmit to the assisted reproduction clinic where Schmit attempted the IVF procedure again. The parties claim they orally agreed as to McGill's rights to any child resulting from the procedure.

However, Schmit claims McGill donated the pre-embryos to her, while McGill claims they agreed he would be the father.

Because the IVF procedure was successful this time, Schmit gave birth to baby O.G.M. in June 1997. Three months later, McGill filed a paternity suit and Schmit answered. Both parties then moved for summary judgment on the issue of paternity. The trial court granted McGill's motion and denied Schmit's. After a six day trial, a jury appointed Schmit O.G.M.'s sole managing conservator and McGill O.G.M.'s possessory conservator. McGill is also possessory conservator of the parties' other minor child.

### I. Discussion

This is a case of first impression without any statutory or precedential guidance. Because of the complexity of potential legal issues arising from the *in vitro* fertilization procedure, we will give deference to the Texas Legislature to enact legislation deciding the rights of parties involved in the *in vitro* fertilization process. Accordingly, we will frame our issue as narrowly as possible.

We are deciding whether a biological father should be denied paternity to a child born through *in vitro* fertilization from a frozen pre-embryo conceived during marriage but implanted into the biological mother after divorce.

### II. Summary Judgment Motions

In points of error one and two, Schmit complains the trial court erred by granting McGill's summary judgment motion, and by denying Schmit's summary judgment motion.

In reviewing a summary judgment, we take the evidence favorable to the non-movant as true and indulge every reasonable inference in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon*, 690 S.W.2d at 548–49. A party may not appeal denial of its motion for summary judgment unless both parties have moved for summary judgment, and one motion is granted while the other is overruled. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988). We consider a denial if the appellant complains of both the granting of the appellee's motion and the denial of its own. *Id.* We may then resolve the entire case, including rendering appropriate judgment. *Utica Nat'l Ins. Co. v. Fidelity & Cas. Co.*, 812 S.W.2d 656, 658–59 (Tex.App.—Dallas 1991, writ denied). Because Schmit complains of both summary judgment motions, we are permitted to consider the merits of McGill and Schmit's summary judgment motions.

### A. Did the Trial Court Err in Rendering Summary Judgment on a Ground Not Presented in McGill's Motion?

Schmit contends the trial court erred in rendering summary judgment on a ground McGill did not raise in his motion. The order rendering summary judgment states:

> After reviewing the pleadings, supporting evidence, and arguments of counsel, the court is of the opinion that [McGill's] motion should be GRANTED and that [Schmit's] motion should be DENIED.

> It is, therefore, ORDERED, ADJUDGED and DECREED:

> THAT [McGill] is the biological father of [O.G.M.] as a result of TEX. FAM.CODE ANN. § 151.101;[1] and

> THAT [Schmit's] motion for summary judgment is DENIED.

Schmit argues that because McGill did not move for summary judgment on the basis of section 151.101, the rendition of summary

---

1. Section 151.101, "Artificial Insemination" provides:
    (a) If a husband consents to the artificial insemination of his wife, any resulting child is the child of both of them. The consent must be in writing and must be acknowledged.
    (b) If a woman is artificially inseminated, the resulting child is not the child of the donor unless he is the husband.
    TEX. FAM.CODE ANN. § 151.101 (Vernon 1995).

judgment in his favor must be reversed. We disagree. The order does not state the summary judgment motion is granted on the basis of section 151.101, but rather makes a statement that McGill is O.G.M.'s *biological* father as a result of section 151.001; it has never been controverted by any party that McGill is O.G.M.'s *biological* father. The trial court did not specifically rule on all of the grounds of McGill's summary judgment motion; therefore, we will consider each of the grounds. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996).

### B. Was the Evidence Sufficient to Support McGill's Summary Judgment?

█ Schmit contends the evidence was insufficient to support the judgment.

### 1. McGill is Named O.G.M.'s Father on Her Birth Certificate.

In his summary judgment motion, McGill argued that as a result of being named O.G.M.'s father on her birth certificate, he is presumed to be her father. McGill relies on the Texas Family Code, which provides:

> The parent-child relationship may be established between a child and the biological father of the child as provided by this code; and
>
> A man is presumed to be the biological father of a child if without attempting to marry the mother, he consents in writing to be named as the child's father on the child's birth certificate.

TEX. FAM.CODE ANN. § 151.001–.002 (Vernon Supp.1999). In support, McGill attached O.G.M.'s birth certificate, which names McGill as O.G.M.'s father. McGill also attached the birth certificate worksheet from Columbia Women's Hospital, which names him as O.G.M.'s father. McGill did not sign the birth certificate.

### 2. McGill Files a Statement of Paternity.

In his motion, McGill also cites Texas Family Code section 160.203, which provides that a statement of paternity executed as provided by this subchapter is prima facie evidence that the child is the child of the person executing the statement, and the person has an obligation to support the child.

TEX. FAM.CODE ANN. § 160.203 (Vernon Supp. 1999).

Section 160.202 entitled "Statement of Paternity" requires the following:

> (a) The statement of paternity to be used by this subchapter must:
>
> (1) be in writing;
>
> (2) be signed by the man alleging himself to be the father of the child;
>
> (3) state whether the man alleging himself to be the father is a minor; and
>
> (4) clearly state that the man signing the statement acknowledges the child as his biological child.
>
> * * * *
>
> (c) The statement must be executed before a person authorized to administer oaths under the laws of this state.
>
> * * * *
>
> (e) The statement must include the social security number of the father.

TEX. FAM.CODE ANN. § 160.203 (Vernon 1995). In support, McGill attached the following:

> a. A sworn affidavit entitled "Statement of Paternity" which states:
>
> "I acknowledge that I am the biological father of [O.G.M.], a female child born to [Schmit] in Harris County, Texas, on June 25, 1997. I was not married to the mother of this child at the time of the birth of the child or at any subsequent time. The child is not the biological child of another man. I consented in writing to be named, and am named, as the child's father on the child's birth certificate."
>
> b. McGill's petition for voluntary paternity, filed September 17, 1997, which requested that his paternity of O.G.M. be adjudicated.

### 3. Schmit's Response and Counter–Motion for Summary Judgment

Schmit's response to McGill's summary judgment motion stated:

> a. McGill is not the presumed father because O.G.M. was born over 300 days after Schmit and McGill were divorced on June 25, 1997.

b. McGill is not the presumed father because even though he is listed as O.G.M.'s father on her birth certificate, McGill did not consent in writing.

c. Even if a presumption of paternity exists that McGill is O.G.M.'s father, sections 160.110,[2] 151.101,[3] 151.102,[4] and 151.103 [5] set out ways to rebut a presumption that McGill is O.G.M.'s father.

d. Because section 101.024 defines parent as a man presumed to be the biological father, McGill is not O.G.M.'s parent. *See* TEX. FAM.CODE ANN. § 160.110 (Vernon 1995)

e. O.G.M.'s parentage is determined by section 151.101(b),[6] not chapter 160.[7]

f. The cryopreservation agreement is not a parenting agreement nor is it an agreement for McGill to be named on O.G.M.'s birth certificate.

g. McGill's affidavit does not prove anything, nor does it controvert the fact that McGill agreed to donate his interest in the pre-embryos and allow Schmit to rear O.G.M. as a single parent.

h. McGill has not met his burden of proof because he has not conclusively established his paternity as a matter of law.

## C. Does the Artificial Insemination Statute Control?

■ In Schmit's summary judgment motion, she alleges the artificial insemination statute controls any parental rights to O.G.M. because the artificial transfer of an embryo to her uterus is analogous to artificial sperm transfer from a donor. *See* TEX. FAM.CODE ANN. § 151.101. Schmit contends the legislature intended to provide a method for women to have children without fear of paternity claims by biological fathers. As a result, Schmit contends that no presumptions of paternity exist, and McGill is not O.G.M.'s father.

The legislative history of section 151.101 does not make any reference to the *in vitro* fertilization procedure. Webster's dictionary defines artificial insemination as the introduction of semen into the uterus or oviduct by other than natural means. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 106 (10th ed.1995). The *in vitro* fertilization procedure which produced O.G.M. involved removing ova from Schmit, fertilizing her ova with McGill's semen in a lab procedure, freezing a portion of the resulting pre-embryos, and later implanting a pre-embryo into Schmit's uterus. Schmit does not cite any authority holding that IVF is the same as artificial insemination. We find Family Code section 151.101 entitled "Artificial Insemination" inapplicable to the facts of this case.[8]

## D. Does the Parties' Intent Control a Court's Determination of Parentage?

Schmit contends the courts have uniformly looked at intent in assisted conception cases. In support, Schmit cites *In the Interest of*

---

2. Section 160.110 sets out the presumptions and burdens of proof in a paternity suit. *See* TEX. FAM.CODE ANN. § 160.110 (Vernon Supp.1999). It provides, *inter alia*, that the party denying a presumed father's paternity has the burden of rebutting the presumption by clear and convincing evidence. *See id.* at 160.110(a). It also provides that if two or more presumptions are in conflict, the presumption that is founded on the weightier considerations of policy and logic controls. *See id.* at 160.110(e).

3. Section 151.101 sets out the paternity rights to a child born through artificial insemination. *See* TEX. FAM.CODE ANN. § 151.101 (Vernon 1995).

4. Section 151.102 sets out the parental rights to a child born as a result of an oocyte donation. *See* TEX. FAM.CODE ANN. § 151.102 (Vernon 1995).

5. Section 151.103 sets out the parental rights to a child born as a result of an embryo donation. *See* TEX. FAM.CODE ANN. § 151.103 (Vernon 1995).

6. Section 151.101(b) provides: "If a woman is artificially inseminated, the resulting child is not the child of the donor unless he is the husband." TEX. FAM.CODE ANN. § 151.101(b) (Vernon 1995).

7. Chapter 160 is entitled "Determination of Parentage." *See* TEX. FAM.CODE ANN. § 160 (Vernon 1995).

8. We note that legislature set out the parental rights to children born through IVF from oocyte or embryo donations. *See* TEX. FAM.CODE §§ 151.102–.103 (Vernon 1995). Because the facts of our case do not deal with oocyte or embryo donations, these statutes are inapplicable.

R.C., 775 P.2d 27 (Colo.1989), *McDonald v. McDonald*, 196 A.D.2d 7, 608 N.Y.S.2d 477 (1994), and *Johnson v. Calvert*, 5 Cal.4th 84, 19 Cal.Rptr.2d 494, 851 P.2d 776 (Ca.1993), for the proposition that the parties' intent is a relevant consideration to a court's determination of parentage. We find Schmit's reliance misplaced. In *R.C.*, a semen donor, who was never married to the child's mother, sought paternity to a child conceived through artificial insemination. 775 P.2d at 28. The court held that a statute extinguishing rights to children born through artificial insemination does not apply to a known semen donor; and the parties' agreement and subsequent conduct is relevant in determining the donor's parental rights. 775 P.2d at 35. In *McDonald*, a married woman who gave birth to a child created from *donated* ova and her husband's sperm divorced her husband and sought maternity adjudication. 196 A.D.2d at 8–9, 608 N.Y.S.2d 477. The court found her to be the "natural mother." 196 A.D.2d at 9, 608 N.Y.S.2d 477. In *Johnson*, a husband and wife sought parental rights to a child born from a surrogate mother. 851 P.2d at 777. The court found the surrogate mother was not the natural mother. 851 P.2d at 782. None of these cases deal with a biological father seeking paternal rights to a child born from his ex-wife through IVF from pre-embryos conceived during marriage. We find these cases to be inapplicable to the case at bar.

### E. Summary

At the summary judgment hearing, the following evidence was before the trial court: (1) McGill is O.G.M's biological father; (2) McGill was named O.G.M.'s father on her birth certificate; (3) McGill filed a statement of paternity; (4) the pre-embryos were conceived while McGill was married to Schmit; (5) McGill consented to Schmit's implantation of pre-embryos created with the her ova and his semen; (6) McGill was present when the IVF procedure took place; (7) McGill pays child support for O.G.M.; (8) Schmit was unmarried at the time O.G.M. was born; (9) there was no writing setting out the parties' agreement regarding rights and obligations to O.G.M.; and (10) depriving McGill of paternity rights would bastardize O.G.M.

We find, as a matter of law, the evidence was sufficient to support the rendition of summary judgment. Accordingly, we find no error in the trial court's rendition of summary judgment in McGill's favor.

### F. Did the Trial Court's Adjudication of McGill as O.G.M.'s Father Taint the Jury's Verdict on Conservatorship?

Schmit contends that by finding McGill to be O.G.M.'s father, the trial court deprived her of her right to a jury trial on the issue of conservatorship. Because we found no error in the trial court's rendition of summary judgment in McGill's favor, we find this contention to be unfounded.

We overrule Schmit's first and second points of error.

### III. Was Schmit Entitled to Attorney's Fees?

In her third point of error, Schmit contends the trial court erred in denying her request for attorney's fees in the amount of $316,066.39.

▐ Reasonable attorney's fees may be taxed as costs in actions brought under the Family Code. TEX. FAM.CODE ANN. § 106.002 (Vernon 1995). The award of attorney's fees in a suit affecting the parent-child relationship is within the sound discretion of the trial court. *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex.1996). Deciding which litigant is a "successful party" is often a difficult task in family law cases. *Billeaud v. Billeaud*, 697 S.W.2d 652, 655 (Tex.App.—Houston [1st Dist.] 1985, no writ).

▐ We are unwilling to find that the trial court abused its discretion in denying Schmit's request for attorney's fees. In the proceedings below, Schmit requested that the trial court: (1) deny McGill paternity to O.G.M.; (2) suspend McGill's visitation rights to O.G.M.; (3) appoint Schmit sole managing conservator; (4) deny McGill conservatorship rights; (5) award Schmit $8,000 a month in child support for O.G.M.; and (6) award Schmit attorney's fees.

The trial court denied Schmit's request to: (1) deny McGill paternity; (2) suspend McGill's visitation rights; (3) deny McGill conservatorship rights; and (4) award Schmit attorney's fees. However, the trial court did appoint Schmit sole managing conservator and award Schmit $4,000 a month in child support.

After comparing the relief requested by Schmit with the relief actually granted by the court, we cannot say that the trial court abused its discretion in denying Schmit's request for attorney's fees. *See Nordstrom v. Nordstrom*, 965 S.W.2d 575, 584 (Tex.App.— Houston [1st Dist.] 1997, no pet.).

We overrule Schmit's third point of error.

We affirm the trial court's judgment.