**In the Interest of B.B.R. a/k/a F.D.R.T.**

No. 2–04–399–CV.

Court of Appeals of Texas,
Fort Worth.

March 2, 2006.

Law Offices of J. Steven King & Heather L. King, Heather L. King, Fort Worth, for appellant.

Jose Luis Aguilar, Antioch, CA, pro se.

Jacqueline Denise Ray, Dallas, pro se.

PANEL B: DAUPHINOT, WALKER, and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

### I. Introduction

Appellant, Family to Family Adoptions, Inc., appeals the trial court's judgment in a parentage action ordering it to pay the father's attorney's fees. Because we hold that the trial court did not abuse its discretion in awarding attorney's fees against Family to Family, we affirm.

### II. Factual Background

This appeal stems from the trial court's award of attorney's fees in a suit to establish a parent-child relationship between appellee Jose Luis Aguilar and his biological son, "B.B.R." A few months before the baby was born, the baby's mother, Jacqueline Denise Ray, located potential adoptive parents for the baby boy and sought to have him placed with them. Appellant Family to Family Adoptions, Inc. was hired sometime in the spring of 2003 to facilitate the adoption. The baby was born on June 17, 2003, the same day that Aguilar filed his petition to establish parentage in Denton County.

Aguilar told Ray before the baby was born that he did not want to relinquish his parental rights to his son. Furthermore, Aguilar also told Debbie Seiler, a Family to Family employee, a few days before the baby was born that he was not willing to give up his parental rights. Nevertheless, Family to Family moved forward with the adoption by preparing an affidavit for Ray's signature relinquishing her parental rights, which named Family to Family as the baby's managing conservator. Family to Family also prepared an adoption plan to be signed by Ray and the potential adoptive parents. Ray and the potential adoptive parents signed these documents on June 19, 2003; six days later, the potential adoptive parents took the baby home with them to Maryland.

On June 20, 2003—three days after Aguilar filed his suit in Denton County—Family to Family filed its own suit to terminate Ray's and Aguilar's parental

rights in Fort Bend County. The record does not reveal how Aguilar became aware of Ray's affidavit, but one week later, Aguilar filed an amended petition in his Denton County suit identifying Family to Family as a party entitled to citation because "[t]he mother signed a parental relinquishment affidavit naming [Family to Family] as managing conservator of this child." The amended petition also named Family to Family as a respondent. On that same day, June 27, 2003, Ray executed an affidavit purporting to revoke her relinquishment of parental rights. Then, on July 18, 2003, the Denton County court ordered Family to Family to retrieve the baby from Maryland and return him to Texas. Family to Family returned the baby and then nonsuited the Fort Bend County action on or about July 21, 2003. Also on July 21, the potential adoptive parents intervened in Aguilar's Denton County suit to gain custody of the baby. They nonsuited this intervention on August 14, 2003.

Over the next year, Ray and Aguilar signed several Rule 11 agreements regarding custody and support arrangements for the baby. The trial court signed an order on September 22, 2004, adjudicating Aguilar to be the baby's father, appointing Aguilar and Ray joint managing conservators of the baby, and giving Aguilar the right to determine the baby's primary residence. This order also directed Family to Family to pay $16,447.98 in fees and costs to Aguilar's attorney. Family to Family now brings this appeal.

### III. Discussion

#### A. Standing

 In its first four issues, Family to Family complains that the trial court was without jurisdiction to award attorney's fees against it because Aguilar lacked standing to sue Family to Family in his parentage action. The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex.2005). In other words, a party has standing when it is personally aggrieved. *Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996). The standing doctrine requires that there be (1) a real controversy between the parties that (2) will be actually determined by the judicial declaration sought. *Id.* at 662. Without standing, a court lacks subject matter jurisdiction to hear the case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443 (Tex.1993).

Family to Family argues that no real controversy existed between it and Aguilar and that Aguilar could not "create" a justiciable controversy merely by naming Family to Family as a respondent in his parentage action. However, Aguilar was not "creating" a controversy by naming Family to Family as a respondent when he filed his amended petition. Instead, a controversy already existed because Aguilar, as the baby's parent, sought managing conservatorship of the baby; yet Ray had named Family to Family as the baby's managing conservator, and Family to Family was exercising conservatorship rights by delivering the baby to the prospective adoptive parents and allowing them to take the baby out of state to live with them.

Family to Family also argues that Aguilar lacked standing because once Family to Family dismissed its Fort Bend County termination suit, any controversy with or adverse interest to Aguilar "was extinguished" and Family to Family had no legal interest in the outcome of the parentage action. Family to Family further claims that it was not a party to the suit

because, after it nonsuited the Fort Bend County action, it informed the parties and the court that it had no legal interest in the suit's outcome and it did not sign any Rule 11 agreements filed by Ray and Aguilar over the course of the suit.

These arguments fail to recognize, however, that at the time Aguilar filed his amended petition, a real controversy did exist between Family to Family and Aguilar over custody and possession of the baby boy. In that amended petition, Aguilar claimed that he was entitled to recover attorney's fees because Family to Family's actions in placing the child with out-of-state adoptive parents over his objections forced him to file the paternity suit. Therefore, Family to Family's subsequent act of dismissing the separate Fort Bend County case—which occurred only *after* the Denton County court ordered Family to Family to have the child returned to Texas—did not extinguish this controversy in this paternity suit over entitlement to attorney's fees. *Compare* TEX.R. CIV. P. 162 (providing that dismissal of claims pursuant to a party's request for nonsuit does not prejudice the right of the adverse party to be heard on a pending claim for affirmative relief and does not extinguish a request for attorney's fees pending at the time of dismissal).

We are not persuaded that Family to Family was not a necessary party to this suit merely because it is not included in the family code's list of necessary parties to parentage suits generally. *See* TEX. FAM.CODE ANN. § 160.603 (Vernon 2002). Naming Family to Family as a party was necessary in this action because Ray had relinquished her rights to the baby at the time the amended petition was filed; as

between the parents and the adoption agency, only Family to Family exercised control over possession of the child and could direct the potential adoptive parents to return the child to Texas. Furthermore, Family to Family filed an answer in this suit and never sought to have itself dismissed from the case in the trial court. Accordingly, we conclude that Aguilar had standing to sue Family to Family for his attorney's fees in this controversy over custody of the baby, and we overrule Family to Family's first four issues.

### B. Attorney's Fees Award

In its fifth issue, Family to Family argues that the trial court abused its discretion by ordering it to pay Aguilar's attorney's fees in the parentage action. The trial court specified in its findings of fact and conclusions of law that it awarded these attorney's fees pursuant to section 160.636 of the family code, which provides that the court "may assess" attorney's fees in a parentage proceeding.[1] TEX. FAM. CODE ANN. § 106.002(a) (Vernon Supp. 2005).

### 1. Standard of Review

 We review the trial court's award of attorney's fees under an abuse of discretion standard. *See In re O.G.M.,* 988 S.W.2d 473, 478 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd) (applying abuse of discretion standard to trial court's ruling on attorney's fees in parentage action); *Adams v. Stotts,* 667 S.W.2d 798, 801 (Tex.App.-Dallas 1983, no writ) (same); *see also Bruni v. Bruni,* 924 S.W.2d 366, 368 (Tex.1996) (holding that award of attorney's fees under section 106.002 in suit affecting the parent-child relationship lies within the trial court's discretion). To de-

---

1. Furthermore, attorney's fees may be awarded in any suit arising under title 5 of the family code. TEX. FAM.CODE ANN. § 160.636(c). Proceedings to establish parentage fall under title 5. *See id.* § 160.601 (providing procedure for adjudicating parentage and falling under chapter 160 of title 5 of the family code).

termine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex.2002). Here, the statute merely says that the court "may assess" attorney's fees in a parentage action; the only statutory limitation placed on this discretion is that the attorney's fees assessed must be "reasonable." *See* TEX. FAM.CODE ANN. § 160.636(c).

■ To be entitled to a discretionary award of attorney's fees, the movant must file with the court an affirmative pleading requesting them unless the issue is waived or tried by consent. *Klaver v. Klaver,* 764 S.W.2d 401, 405 (Tex.App.-Fort Worth 1989, no writ). Here, Aguilar made his affirmative request for attorney's fees against Family to Family in his first amended petition, which he filed when the child was still outside Texas as a result of Family to Family's actions.

### 2. Statutory Basis for Attorney's Fees Award

■ Family to Family argues that the statute providing for payment of attorney's fees in parentage actions is intended to apply to parents only. However, it does not cite, and we have not found, any authority for this proposition when the parentage action is filed *by the father* in an effort to contest a nonparent's attempts to terminate his parental rights. While the statute does exclude governmental agencies from having attorney's fees assessed against them, *see* TEX. FAM.CODE ANN.

§ 160.636(d), the mere fact that governmental agencies are excluded does not establish that the statute allows assessment of attorney's fees against parents alone. Under section 160.002, the family code's general provision for assessment of attorney's fees in all suits affecting the parent-child relationship, nonparents involved in the suit are equally subject to having attorney's fees assessed against them. *See, e.g., In re Cassey D.*, 783 S.W.2d 592, 597 (Tex.App.-Houston [1st Dist.] 1990, no writ) (affirming award of attorney's fees against friend of child's mother); *Garner v. Garner*, 673 S.W.2d 413, 415, 418 (Tex. App.-Fort Worth 1984, writ dism'd w.o.j.) (affirming award of attorney's fees against grandparents); *Yancey v. Koonce*, 645 S.W.2d 861, 864–65 (Tex.App.-El Paso 1983, writ ref'd n.r.e.) (same). The family code does not limit the parties against whom the trial court may assess reasonable attorney's fees in a parentage action, so we decline to hold that the trial court abused its discretion by assessing attorney's fees against Family to Family merely because Family to Family is not the baby's parent.

### 3. Findings of Fact

The trial court made the following findings of fact that reveal Family to Family's role in the dispute over the baby and a lack of candor on the part of Family to Family in its efforts to push the adoption through:

4. Prior to the birth of the child . . . , [Aguilar] spoke by telephone with [Family to Family] and advised [Family to Family] that he would not agree to an adoption of his child. [Aguilar] was returning telephone calls from [Family to Family], who had his correct telephone number. [Family to Family] never

asked [Aguilar] for his correct address.

5. [Ray] voiced concern to agents of [Family to Family] that [Aguilar] would not consent to an adoption. [Ray] was told by agents for [Family to Family] that they only had to show "due diligence". They further told [Ray] that they would publish notice in an "itty bitty" article that didn't have to be in the county where [Aguilar] resided.

. . . .

7. On June 19, 2003[,] [Family to Family] was advised by [Aguilar's] attorney that a lawsuit had been filed in Denton County, Texas on June 17, 2003 to establish the paternity of [Aguilar].

8. [Family to Family] prepared an Affidavit In Support of Citation By Publication for service of process on Mr. Aguilar. [Family to Family] induced [Ray] to sign the affidavit on June 19, 2003 even though they had [Aguilar's] telephone number and had already spoken to him.

9. [Ray] advised [Family to Family] that the address listed for Mr. Aguilar in the Affidavit In Support of Citation By Publication was incorrect. [Ray's] warning was disregarded by [Family to Family].

10. Despite being previously advised of the pending lawsuit filed in Denton County[,] [Family to Family] filed Suit To Terminate The Parent–Child Relationship between the child . . . and [Ray] and [Aguilar]. This suit was filed in Fort Bend County, Texas[,] on June 20, 2003.

The address shown for service of process on Mr. Aguilar was the office of his attorney in the instant case that had advised [Family to Family] of the previous Denton County filing.

11. [Family to Family] then transferred possession of the child . . . to the prospective adoptive parents, . . . who then removed the child to the State of Maryland.

Family to Family disputes the trial court's consideration of its statements and actions regarding "due diligence," the "itty bitty" article, and the affidavit in support of citation by publication because Aguilar acquired personal knowledge of Family to Family's intent to seek termination before the suit was filed. It further asserts that the trial court erred by ordering it to pay Aguilar's attorney's fees because Aguilar would have filed his parentage action even if an adoption had never been contemplated and because Family to Family was legally entitled to seek termination of Aguilar's parental rights even without Aguilar's consent. Nevertheless, the trial court's findings of fact indicate that the urgent nature of this paternity suit's filing, the involvement of additional parties beyond the parents, and the extent of the ensuing litigation were circumstances created by Family to Family's actions. As the trial court observed at the hearing, "[W]ho knows what would have happened if that first step [by Family to Family] had not been taken?" Therefore, we cannot say that, under these facts, Family to Family's actions had no role in or impact on the filing and course of this paternity suit.[2]

Family to Family also disputes the trial court's finding that Family to Family re-

---

**2.** Family to Family also argues that the trial court abused its discretion by basing its attorney's fees award on Aguilar's unpleaded, unproven allegations of fraud. However, nowhere in the trial court's findings of fact and conclusions of law does the court state that Family to Family committed fraud. Accordingly, we are not persuaded by this argument.

ceived notice of Aguilar's Denton County parentage action before it filed its Fort Bend County termination suit, claiming that the trial court based its finding on comments made by Aguilar's attorney over controverting testimony from Family to Family's witnesses. But Aguilar's attorney also requested the court to take judicial notice of testimony from a prior hearing in this case, in which a witness testified that she contacted Family to Family on June 19, 2003—the day before Family to Family filed its termination suit in Fort Bend County—to inform Family to Family that Aguilar had filed his Denton County lawsuit two days earlier. Family to Family did not object to this request. Furthermore, issues of credibility were left to the trial court, as the finder of fact in this case, and it was free to disbelieve Family to Family's witnesses. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex.2003) (stating that the fact finder "is the sole judge of the credibility of witnesses and the weight to be given to their testimony").

**4. Reasonableness of Attorney's Fees Award**

■ Finally, Family to Family argues that the attorney's fees award was not reasonable because testimony as to the amount of fees incurred was unclear. We disagree. The court admitted into evidence detailed billing records from Aguilar's attorney substantiating the amount of fees claimed. Furthermore, because Aguilar's fitness to be awarded custody of the baby was a pivotal issue in this lawsuit, we find nothing unreasonable in his attorney's billing for conversations held with Aguilar's mother and another member of her household, particularly when, as the attorney testified, Aguilar's family was "very involved" in this custody dispute.

Family to Family also argues that the attorney's fees award was unreasonable because Aguilar's attorney did not segregate expenses incurred in the Fort Bend County lawsuit from expenses incurred in the Denton County parentage action. In support, Family to Family cites *Goheen v. Koester*, 794 S.W.2d 830, 836 (Tex.App.-Dallas 1990, writ denied), which held that the trial court abused its discretion in awarding attorney's fees to the mother in a custody dispute when the evidence showed that a portion of those fees were incurred not in the attorney's representation of the mother but rather in the attorney's representation of the child's stepfather, who was seeking to adopt the child in the same lawsuit.

Here, however, all the attorney's fees awarded by the trial court were incurred in the attorney's representation of Aguilar alone in his efforts to establish parentage and gain custody of the baby. We are not persuaded that the trial court abused its discretion in awarding fees incurred in relation to the Fort Bend County lawsuit merely because Family to Family chose to assert its termination cause of action in a separate lawsuit in Fort Bend County rather than in Denton County, which already had dominant jurisdiction over the custody dispute. *See Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex.1974) ("[T]he court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts."). Family to Family's subsequent lawsuit involved the same parties and subject matter as the Denton County lawsuit, so Denton County was the appropriate venue for Family to Family's cause of action. *See id.* Family to Family cannot avoid attorney's fees incurred by Aguilar in the dispute over custody of the baby boy merely by bringing its claims in a separate, subsequent lawsuit that more appropriately belonged in the first-filed Denton County proceeding.

Our decision does not, as Family to Family claims, "open the door to unending litigation" against adoption agencies. The only issue in this case is whether, in a parentage action, the family code allows assessment of attorney's fees against an adoption agency; we have determined that it does. But the attorney's fees award is not automatic—the trial court still must act reasonably and not arbitrarily in deciding to assess attorney's fees against an adoption agency. Here, the trial court found Family to Family's actions "sloppy at best and unconscionable at worst"; under the singular facts of this case, we cannot conclude that the trial court abused its discretion in ordering Family to Family to pay Aguilar's attorney's fees. We overrule Family to Family's fifth issue.

## IV. Conclusion

Having overruled all of Family to Family's issues, we affirm the trial court's judgment.