BOWIE NATIONAL BANK, Bowie,
Texas, et al., Petitioners,

v.

Bobby F. STEVENS et al., Respondents.

No. B–5054.

Supreme Court of Texas.

Nov. 26, 1975.

Rehearing Denied Feb. 18, 1976.

Jack Connell, Bowie, for petitioner.

W. John Allison, Jr., J. W. Hassell, Jr., Dallas, for respondents.

GREENHILL, Chief Justice.

This is a suit in which debtors sought the affirmative equitable relief of cancellation of a trustee's deed executed after a foreclosure sale under a deed of trust. Trial was to a jury, and judgment was entered upon the jury's verdict for the defendant bank, Petitioner here. The court of civil appeals reversed the judgment of the trial court and rendered a judgment that the trustee's deed be set aside. 517 S.W.2d 686. We reverse that judgment and affirm the judgment of the trial court.

The note and deed of trust giving rise to this litigation were executed by A. D. and Fern Gibbons on January 8, 1963, and were given to Fred Ford in exchange for a piece of property in Bowie, Texas. Under the terms of the agreement, the Gibbons were to pay 134 monthly installments of $50.00 each to Ford's order at the First National Bank, Bowie, Texas. Ford later transferred the note, the vendor's lien and deed of trust to his brother, C. W. Ford. Sometime prior to July of 1968, C. W. Ford placed the note with the petitioner, Bowie National Bank, as his agent for collection.

Respondent Bobby F. Stevens acquired the property from the Gibbons on December 27, 1968, and assumed payments on the note. At that time, payments were in arrears. Stevens fell further behind by missing a payment in each of the years of 1969, 1970, and 1971.

On March 2, 1971, the Bowie Bank purchased the note from C. W. Ford for the specific purpose of foreclosing on it. It was the Bank's hope that it could thereby reduce its losses arising from other unrelated loans to Stevens. On acquiring the note, the Bank turned the matter over to its attorney for foreclosure. The required notices were posted on March 8, 1971, and the property was sold to the Bank on April 6, 1971.

When the Bank acquired the note, it did not then notify Stevens, nor did it make presentment or demand payment of the delinquencies. However, on the same day that the notices of sale were posted, Stevens came into the Bank to make a payment on the note. He was told by Franklin Wilson, the Bank's president, that notices had been posted and that the Bank was foreclosing on the property. At Wilson's suggestion, Stevens did not make that payment, but applied the $50.00 to another note. After this meeting with Wilson on March 8, 1971, Stevens made no further attempts to pay on the note, nor did he take any other steps to prevent the foreclosure. Instead, he assigned the property to Respondent W. John Allison, Jr., on March 23, 1971, and let the foreclosure sale occur two weeks later without protest. Allison made no attempts to tender payment or prevent the sale after he acquired the property. The jury found that the Bank did accelerate the maturity of the remaining installments and that the Bank notified Stevens that the entire balance had been declared due.

The jury also found that C. W. Ford "had waived the delinquency of payments" prior to March 2, 1971. Since the Bank acquired the note with knowledge of the delinquency, it could not be a holder in due course. Tex.Bus. & Comm.Code Ann. § 3.302(a)(3),

§ 3.304(c)(1) (1968). Therefore it took the note subject to all defenses, including waiver. Tex.Bus. & Comm.Code Ann. § 3.306(2) (1968).

Respondents Stevens et al. contend that "the waiver" was of the right to accelerate and foreclose. They rely on the following language contained in the case of *San Antonio Real-Estate, Building & Loan Ass'n. v. Stewart,* 94 Tex. 441, 61 S.W. 386 (1901):

". . . while neither party by his separate action or nonaction could impair the rights of the other, each could waive his own rights as they accrued from the default in payment of an installment so as to estop him from relying upon such default. To accomplish this, it would only be necessary that each should so act as to justify the other in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded, and that the contract should stand as if there had been no default. The principle of estoppel by waiver would, we think, have proper application in such a case."

■ It is clear that, prior to March 8, 1971, Stevens could have been justified in believing that the delinquencies were to be disregarded for the purposes of acceleration and foreclosure. However, after learning that the Bank was attempting to mature the unpaid balance and foreclose under the deed of trust, such belief would hardly remain justified. Under these facts, Stevens was charged with knowledge that he could no longer rely on the holder to further waive its right to insist upon strict compliance with the note and deed of trust. *Iden v. Lippard,* 166 S.W.2d 185 (Tex.Civ.App.— Waco 1942, no writ). Since the waiver was no longer in effect, it became Stevens' duty to tender the amount of the delinquencies. This he failed to do.

■ As a result, he became subject to the terms of the note and deed of trust as if there had been no waiver. The deed of trust authorized the Trustee, in case of de-

fault or failure to make prompt payment of any part of the indebtedness, to sell the property after posting notice of such sale for at least twenty-one successive days prior to the day of the sale. Stevens had clearly failed to make prompt payment of part of the indebtedness. As discussed above, C. W. Ford's waiver did not preclude the foreclosure. The notices of sale were posted for more than the requisite number of days after Stevens' failure to tender the delinquencies. Since all of the requirements of the deed of trust were complied with, the foreclosure sale was valid. Having failed to tender the amount due on the note prior to the sale, Respondents have no right to cancel the sale. *Breitkreutz v. Cook,* 135 Tex. 574, 144 S.W.2d 534 (1940); *Hemphill v. Watson,* 60 Tex. 679 (1884); *Whalen v. Etheridge,* 428 S.W.2d 824 (Tex. Civ.App.—San Antonio 1968, writ ref'd n. r. e.).

Accordingly, it is our opinion that the trial court's judgment in defendants' favor was proper, and we reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.