In the Interest of CASSEY D., a Child.

**Sheila BATES and Bobby
Dotson, Appellants,**

v.

**GALVESTON COUNTY CHILDREN'S
PROTECTIVE SERVICES, Appellee.**

No. 01–89–00480–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 11, 1990.

Timothy A. Beeton, Laurette T. Williams, Simpson, Beeton & Levenworth, Texas City, for appellants.

Michael J. Guarino, Criminal Dist. Atty., Joseph M. Tabaracci, Asst. Criminal Dist. Atty., Galveston, for appellee.

Before EVANS, C.J., and COHEN and HUGHES, JJ.

### ORDER

EVANS, Chief Justice.

This is an appeal from an order in a suit affecting the parent-child relationship. The court's order denied the request of a family friend, Bobby Dotson, for court-ordered access to the child.

Sheila Bates is the natural mother and possessory conservator of Cassey D., a severely handicapped, five-year-old child. When Cassey was born in 1984, she suffered multiple birth defects, including partial loss of sight, severe hearing impairment, severe respiratory problems, developmental delay, and other related problems, all of which are medically known as Charge Association or Charge Syndrome. Cassey also tested HIV positive as a result of an infected blood transfusion. During the first several years of her life, Cassey's medical problems required continuous treatment, including hospitalization on some 19 occasions. In August 1987, Galveston County Children's Protective Services was named temporary managing conservator of Cassey, and on January 4, 1989, the court ordered Cassey's placement at Open Arms, Inc., a specialty child health care facility in Dallas.

Earlier, in March 1986, while Cassey was hospitalized in Galveston, appellant Bobby Dotson, who is not related to Cassey or her family, met Cassey at the hospital. Dotson became Cassey's good friend, and he visited her almost daily from March 1986 until January 1989, when she was moved to the Dallas facility. During that period, Dotson purchased medical supplies, toys, and clothing for Cassey, stayed overnight with her when she was ill, and took her to the doctor. Dotson and Cassey became close friends, and the two enjoyed walking around the hospital or going to the Galveston beach. Dotson testified that he loved Cassey, and that they had a very strong bond. Cassey's mother, Sheila Bates, testified that Dotson had more contact with Cassey than any person, other than herself. At one point, Children's Protective Services asked Dotson to become Cassey's foster parent, but he declined because he was concerned about his ability to meet her complex medical needs. Cassey's mother testified that Cassey would rather be with Dotson than anyone else.

When Cassey was moved from Galveston to Dallas, both Dotson and Bates experienced problems in arranging visits with her. According to the standard visitation policy of the Open Arms facility, visiting hours are Monday through Friday from 10:00 a.m. to 1:00 p.m. The facility strictly adheres to this visitation schedule, and the policy applies to all visitors. The Open Arms policy also discourages visitors from having long conversations with the staff, and a person desiring particular information about a child must make an appointment.

Both Dotson and Bates had trouble arranging visitations during week days, and Bates could only visit her child at times when she could arrange transportation with her fiancee or with Dotson. Dotson and Bates asked for weekend visitation privileges, but Open Arms denied those requests. Bates testified she also had difficulty obtaining information by telephone calls to the Open Arms facility.

Soon after Cassey was placed at the Open Arms facility in Dallas, an incident occurred that tended to exacerbate the visitation difficulties of Bates and Dotson. On his first visit to the Dallas facility, Dotson became quite upset over respiratory "suction" treatments that the Open Arms staff was administering to Cassey. During Cassey's hospitalization at the University of Texas Medical Hospital in Galveston, the doctors there concluded that she should never undergo suction treatments. Evidently, Dotson knew of that medical conclusion, and when he saw the suction treat-

ment being administered to Cassey in Dallas, he became most concerned. He felt that the suction treatment was a painful and brutal procedure, and one which had been prohibited by the physicians at the University of Texas Medical Branch in Galveston. He felt the Open Arms' staff were needlessly hurting Cassey, and he became very angry at what the staff was "doing to his child." When he became upset, Dotson raised his voice and threatened to have a court make them stop the suction process. An Open Arms' staffperson, who confronted Dotson at the time, testified that Dotson acted aggressively and threateningly, although she did not fear for her safety or for Cassey's. From that point on, both the Dallas Open Arms facility and the Galveston Children's Protective Services took the position that Dotson would have to strictly conform to the Open Arms' visitation policies, and that an Open Arms administrative staff person must always be present during his visitations. Thus, Dotson's visitation privileges were firmly restricted as a result of his confrontation with the Open Arms staff during his initial visit to that facility.

In February 1989, Bates, on her own behalf and on behalf of Dotson, whom she described as "an interested party and family friend," moved for entry of an order requiring Galveston County Children's Protective Services, as temporary managing conservator of Cassey, to allow her and Dotson reasonable visitation and access to the child. She alleged that Dotson had a special relationship with Cassey, which had developed as a result of his daily visits and care of her over the past three years, and that she and Dotson had been denied reasonable visitation and reasonable access to direct information regarding Cassey since Cassey's placement at the Open Arms facility. She alleged that the policies of the Open Arms facility and the temporary managing conservator had, for all practical purposes, totally and completely excluded Dotson from Cassey's life, and that such policy was in retaliation for his opposition of her placement at that facility and for his complaint about the facility's use of respiratory therapy. Bates asked for an order grant-

ing visitation rights to her and to Dotson on alternating weekends, commencing at 1:00 p.m., and ending at 4:00 p.m. on Saturday and Sunday afternoons, and for an order allowing her to make at least biweekly telephone calls to the Open Arms staff, during working hours, in order to gain information about the child and her condition.

On April 14, 1989, the trial court entered the order that is the subject of this appeal. In this order, the court concluded that it had continuing jurisdiction over the child; that it was in the child's best interest for Sheila Bates to be permitted to visit the child at the Open Arms facility in Dallas, "in accordance with the visitation policy established by the managing conservator (Children's Protective Services) by giving no less than 24 hours notice of such proposed visit"; that Bates be permitted to visit the child at the Open Arms facility "at all other times including weekends on 24 hours notice and the prior agreement of all affected parties"; and finally, that Bates be permitted to make telephone contact with Open Arms one time per week during weekdays between 8:30 a.m. and 5:00 p.m. to inquire about the status of Cassey. The trial court's order also denied Dotson's plea in intervention, concluding that Dotson did not have legal standing to be named a possessory conservator of the child. The order further provided, however, that Dotson be allowed visitation with the child, "subject to the discretion of the Managing Conservator, and under such terms and conditions as the Managing Conservator deems to be in the best interest of the child."

The court's order further provided that the temporary managing conservator would have the "sole final decision making authority" in matters concerning the child's well-being, and the exclusive authority to release information related to the child, subject only to the rights and privileges accorded Bates as possessory conservator.

The court's order awarded the attorney ad litem $1,200 against Dotson, and assessed all other costs jointly against Bates and Dotson.

The trial court filed findings of fact and conclusions of law, which determined, among other things, that: (a) Dotson's conduct, when visiting Open Arms, threatened the ability and willingness of Open Arms to provide continued care for Cassey; (b) no party had brought forward an alternative placement for Cassey as beneficial to her as Open Arms; (c) Cassey "temporarily bonds" readily to many people and has no special bond to or special emotional feeling for Dotson; (d) the visitation policy of the managing conservator and Open Arms is reasonable and necessary for the operation of the facility; (e) the visitation policy of the managing conservator and Open Arms with respect to Bates and Cassey was in the child's best interest; (f) Dotson lacked standing to assert a plea in intervention; and (g) his contact with Cassey was not of sufficient substance to give him standing to request possessory conservatorship. Finally, the court concluded that it was in the best interest of Cassey that Dotson *not* have possessory conservatorship of the child.

In their first two points of error, Bates and Dotson challenge the trial court's findings and conclusions that Dotson lacked substantial past contact sufficient to give him standing to intervene in the action.

Section 11.03 of the Texas Family Code provides:

> An original suit affecting the parent-child relationship seeking possessory conservatorship may be brought by a person deemed by the court to have had substantial past contact with the child sufficient to warrant standing to do so only by intervening in a pending suit affecting the parent-child relationship.

Tex.Fam.Code Ann. sec. 11.03(c) (Vernon 1986).

Dotson concedes it was his burden to prove both a "substantial past contact with the child sufficient to warrant standing" and to show that it would be in the best interest of child for the court to name him

as a possessory conservator. We have concluded that the trial court did not abuse its discretion in deciding that Dotson did not meet his burden of showing that his appointment as co-possessory conservator would be in the best interest of the child, and therefore, it is unnecessary, in the disposition of the appeal, to decide whether the trial court erred in finding a lack of substantial past contact on Dotson's part to justify his intervention.[1] Neither do we consider it essential to address appellee's argument that the lapse of time between the appointment of appellee, as temporary managing conservator in August 1987, and Dotson's intervention in February 1989, made that temporary order "de facto final" precluding Dotson's right to intervene. Because of the unique circumstances of the case, we decline to consider these legal questions, concluding that we should refrain from ruling on issues of such far reaching importance unless compelled to do so. *See Stevens v. Bowie Nat'l Bank of Bowie*, 517 S.W.2d 686, 689 (Tex.Civ.App.—Fort Worth 1974), *rev'd on other grounds*, 532 S.W.2d 67 (Tex.1975).

In their third point of error, Bates and Dotson contend that the trial court erred in ruling the best interest of Cassey would not be served by naming Dotson an additional possessory conservator, arguing that the undisputed evidence shows that both Bates and Children's Protective Services recognized Dotson's significant relationship to the child.

■ A natural parent has certain rights, including the right to "surround the child with proper influences," and the right to "direct upbringing and education" of the child. *Matthews v. Simmons*, 589 S.W.2d 156, 159 (Tex.Civ.App.—Tyler 1979, no writ). The parent's rights must yield, however, to the best interest of the child, and in case of a conflict, the parent's desires and interests are not controlling. *Scozarri v. Curtis*, 398 S.W.2d 819, 822 (Tex.Civ. App.—Fort Worth 1966, no writ).

---

1. The trial court could have rested its decision solely on the threshold question of Dotson's standing to intervene. The court, however, without objection from either party, proceeded to hear evidence on the issue of whether the appointment would be in the best interest of the child.

■ Here, there is evidence showing a strong attachment between Dotson and the child, and it is undisputed that Bates considered Dotson a fit and suitable person to be appointed as the child's co-possessory conservator. A strong attachment alone, however, does not conclusively establish that Dotson's appointment would be in the best interest of the child. *See Jacobs v. Balew*, 765 S.W.2d 532, 533 (Tex. App.— Beaumont 1989, no writ). Nor was the trial court compelled to accept the mother's viewpoint that Dotson's appointment would be in the child's best interest. *Scozarri*, 398 S.W.2d at 822.

This case is unique because of the child's very complex medical problems and needs. The undisputed evidence shows that the child has serious, long-term medical problems, and that she requires continuing medical attention and care. It is also undisputed that, for the child to survive, she must be maintained in a very structured environment, and that the Open Arms facility in Dallas is the only known facility in Texas that can give the child the care she requires. Thus, the trial court, in deciding upon a visitation order that would best serve the child's interest, could properly have concluded that visitation privileges should be restricted to those that would not jeopardize the child's continuing care at the Open Arms facility.

We find no evidentiary basis supporting Dotson's request to be appointed co-possessory conservator, except the testimony showing Dotson's close relationship with the child and Bates' desire to have him so named. Although the trial court might have decided that such co-possessory conservatorship would be in the best interest of the child, the court was not compelled to reach that conclusion. In view of the testimony about Dotson's past conflicts with the staff of the Galveston Children's Protective Services and the Open Arms facility, and in light of the child's unique medical needs and the absence of other placement services in Texas that could fulfill those needs, the trial court was justified in deciding that Dotson's appointment as a co-possessory conservator would not be in the child's best interest.

A trial court is in the best position to exercise its discretion on factual matters, and it is difficult for an appellate court to determine, by simply reading the record, whether that discretion has been abused. *Little v. Little*, 590 S.W.2d 620, 624 (Tex. Civ.App.—Tyler 1979, no writ). Here, we conclude that there is evidence to support the trial court's discretionary determination, and we do not find its decision so arbitrary or unreasonable as to warrant a reversal of its judgment.

We accordingly overrule the third point of error.

Because of this ruling, we need not consider the fourth, fifth, sixth, seventh, or eighth points of error, which relate to the trial court's findings on various evidentiary matters bearing on the best interest of the child question.

■ In points of error nine and ten, Bates and Dotson contend the trial court erred in failing to order specific visitation for Dotson and for Bates. As stated before, the trial court allowed visitation privileges to Dotson, "subject to the discretion of the Managing Conservator and under such terms and conditions as the Managing Conservator of said child deems to be in the best interest of said child." Because of our conclusion that the trial court did not err in rejecting Bates' motion that Dotson be named as a co-possessory conservator, based upon its finding that Dotson's possessory conservatorship would not be in the best interest of the child, we conclude that the trial court's ruling regarding Dotson's visitation privileges must be upheld and that the court was under no obligation to order specific visitation privileges for Dotson. We accordingly overrule the ninth point of error.

We further conclude, however, that we must sustain the tenth point of error in which Bates contends the court erred in refusing to grant her request for specific visitation privileges.

■ A parent is usually entitled to have periodic visiting privileges with his or her child, and that privilege should not be de-

nied except in an extreme case of parental unfitness. *See Anderson v. Martin,* 257 S.W.2d 347, 354 (Tex.Civ.App.—Amarillo 1953, writ ref'd n.r.e.).

Section 14.03 of the Texas Family Code provides:

> The court may ... set time and conditions for possession of or access to the child by the possessory conservators or others. If ordered, *the times and conditions for possession of or access to the child must be specific and expressly stated in the order,* unless either party shows good cause why specific orders would not be in the best interest of the child.

Tex.Fam.Code Ann. sec. 14.03(a) (Vernon 1986). (Emphasis added.)

 The temporary managing conservator, Children's Protective Services, has not shown any persuasive reason why the Open Arms' visitation policy should be given controlling effect over the Texas Family Code requirement that an access order be "specific and expressly stated." Neither has the temporary managing conservator shown good cause why a specific visitation order would not be in the best interest of the child.

We accordingly sustain point of error 10.

In view of our disposition of the ninth and tenth points of error, we need only briefly consider the fourteenth point of error, in which Bates and Dotson assert the court erred in conditioning visitation upon the agreement of the temporary managing conservator, because the temporary managing conservator was not appointed in accordance with the requirements of the Texas Family Code.

The conservatorship was initiated on August 24, 1987, by an emergency order, which was later included in the original petition for suit affecting the parent-child relationship. The original emergency order was issued pursuant to the specific provisions of Tex. Fam.Code Ann. secs. 17.01 and 17.02 (Vernon 1986 & Supp.1989). In compliance with section 17.01, an original proceeding was filed and an adversarial hearing scheduled for August 28, 1987. Bates received notice of the hearing, and her attorney attended in her place. The conservatorship, initially established on August 24, 1987, has been continued by a series of consecutive orders up to the present. The records show that the trial court's action complied with the requirements of the Texas Family Code.

We overrule the fourteenth point of error.

We move finally to the twelfth and thirteenth points of error, in which Bates and Dotson argue the court erred in assessing attorney's fees against Dotson.

The record shows that the court appointed Ms. Patricia Gray as guardian ad litem for the child in 1987. Ms. Gray testified she spent twelve hours preparing for trial, which resulted in attorney's fees of $1200. The court assessed the attorney's fees against Dotson, and assessed the other court costs against the movants jointly.

Reasonable attorney's fees may be taxed as costs and assessed against movants. Tex.Fam.Code Ann. sec. 11.18(a) (Vernon 1986). A guardian ad litem appointed to protect the interest of a minor is a cost incurred by the party or parties whose conduct made the appointment necessary and "no part of the fee should be taxed against other parties to the suit unless facts or circumstances are shown by the record from which it clearly appears that he or they should, in fairness, be required to pay all or part of the fee." *Dawson v. Garcia,* 666 S.W.2d 254, 265 (Tex.App.—Dallas 1984, no writ).

 Regardless of Dotson's standing to intervene, the court did not abuse its discretion in assessing attorney's fees against Dotson, who sought to intervene with Bates in her motion, and who fully participated in the proceeding. We accordingly overrule the twelfth and thirteenth points of error.

Our determination that the trial court erred in failing to state specifically and expressly in its order the times and conditions for Bates' possession of or access to the child would ordinarily require that the court's order be reversed and that the

cause be remanded for reconsideration of that issue. A remand, however, contemplates further contested proceedings in the trial court, and such additional proceedings may not serve the best interests of either the child or the parties. Moreover, by simply remanding this issue to the trial court, it is questionable whether this Court has met its statutory duty to encourage the peaceable resolution of disputes, particularly those affecting the parent-child relationship. *See* Tex.Civ.Prac. & Rem.Code Ann. sec. 154.001–154.073 (Vernon Supp.1989).

On oral submission, counsel for both sides, as well as the court-appointed guardian ad litem, indicated to this Court that, once the parties' respective claims had been determined by this Court's rulings, it would be possible for the parties to negotiate some mutually acceptable access provisions for Bates and Dotson. Courts of appeal may make any appropriate order, as the law and the nature of the case may require. Tex.R.App.P. 80(c). To expedite negotiations concerning the conditions for Bates' and Dotson's possession of or access to the child, this Court, on its own motion, refers these issues to a mediation proceeding, pursuant to the provisions of Tex.Civ.Prac. & Rem.Code Ann. secs. 154.001–154.073 (Vernon Supp.1989). In the event such mediation proceeding results in a settlement of such issues within the time herein specified, or any extension that this Court may order, the court will dispose of the appeal in accordance with the parties' settlement agreement. *See* Tex.R.App.P. 59(a). If the negotiations do not result in an agreement between the parties within 60 days from this date, the judgment of the trial court will be affirmed, except with respect to the access rights of appellant, Sheila Bates. As to that matter, the judgment will be reversed and the cause remanded for further proceedings.

Accordingly, we order the parties to submit the issue of Bates' and Dotson's possession of or access to the child to a mediation proceeding. We further order proceedings in this Court stayed for 60 days. At the expiration of that period, if the parties have not filed a motion indicating a settlement, if any, the judgment of the trial

court will be reversed concerning the issue of specific visitation rights of appellant, Sheila Bates, and that issue remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment will be affirmed.

It is so ORDERED.