**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed August 29, 2019.**



In The

# Fourteenth Court of Appeals

———

### NO. 14-18-00283-CV

———

## JESSICA JEAN BRANDON, Appellant

### V.

## SHAWN M. RUDISEL, Appellee

**On Appeal from the 425th Judicial District Court**
**Williamson County, Texas**
**Trial Court Cause No. 13-1795-F425**

## O P I N I O N

A mother appeals the trial court's order modifying the conservatorship of her three children. She also challenges the court's order denying her any rights of possession or access to the children. We affirm in part and reverse and remand in part.

### I. PROCEDURAL AND FACTUAL BACKGROUND

During their marriage, appellant Jessica Jean Brandon ("Mother") and

appellee Shawn M. Rudisel ("Father") had three children together, Paul, James, and Kayla.[1]  Mother and Father divorced in 2013.  The trial court named each parent as a joint managing conservator, with Mother having the primary right to designate the children's residence.   Under the order in place for two years before the underlying modification suit, the children lived with Mother and would spend every other weekend with Father.

In September 2017, Father filed suit to remove Mother as a joint managing conservator. He asked the trial court to deny Mother access to the children.  Father sought a temporary restraining order as well as temporary orders. Father's supporting affidavit describes a series of events occurring since 2016 involving Mother's care of the children, including reports from Children and Family Protective Services ("CPS") made against Mother for drug abuse and neglect and for housing the children with two successive live-in boyfriends, the latter of whom Father discovered had a history of using and selling methamphetamines. In the affidavit, Father explains that Mother left the children with Father on the first day of June in 2017, for what was supposed to be a week, but the period lasted for six and a half weeks, despite Father's repeated attempts to reach Mother.   In the affidavit Father described concerns for the children's shelter, reporting that Mother claimed her home had black mold and rat feces, that she was looking but unable to find a place to live, and had been living in hotels.  He reported that Mother told him that she had not enrolled the children in school because she had not yet found a place to live.

*Temporary Restraining Order*

Mother, represented by counsel, appeared at the hearing on Father's request for a temporary restraining order.  The trial court signed a temporary restraining

---

[1] We refer to the children by these pseudonyms to protect their privacy.

order that removed Mother's possession of and access to the children, and that conferred on Father the right to withdraw them from their current school and enroll them in a school where he lived.

*Temporary Orders*

The trial court set a hearing to decide temporary orders two weeks later. When that date arrived, Mother's counsel withdrew from representing her. Mother did not appear at the hearing. The trial court signed temporary orders in which the court denied Mother access to the children pending final resolution of the case.

*Trial-Setting Notice*

On October 31, 2017, Father filed a "Notice of Final Trial on the Merits," giving notice that the case was set for trial on December 18, 2017 (the "Notice").

*Trial on the Petition to Modify Conservatorship*

Mother did not appear at trial. Father was the only witness at trial. The trial court issued its final order modifying the parent-child relationships.

In its order the trial court appointed Father as the children's sole managing conservator and did not appoint Mother as a possessory conservator, implicitly removing Mother as a managing conservator and giving Father exclusive rights as managing conservator, including the right to designate where the children live and go to school. In the order the trial court explicitly denied Mother the parental rights ordinarily conferred to parents appointed as conservators (managing or possessory) under section 153.073 of the Texas Family Code. In making this ruling, the trial court stated:

> [Mother] does not have the following rights and the following rights are suspended:
> 1. the right to receive information from any other conservator of the

children concerning the health, education, and welfare of the children;

2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3. the right of access to medical, dental, psychological, and educational records of the children;

4. the right to consult with a physician, dentist, or psychologist of the children;

5. the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6. the right to attend school activities;

7. the right to be designated on the children's records as a person to be notified in case of an emergency;

8. the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9. the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

The trial court expressly rejected Mother's appointment as a possessory conservator, and in the order recited findings under section 153.191 of the Texas Family Code to underpin this decision—that "the appointment of [Mother] as a possessory conservator is not in the best interest of the children," and "that parental possession or access of the children by [Mother] would endanger the physical or emotional welfare of the children."

Finally, under the section defining Mother's possession of and access to the children, the order states:

[Mother] shall not have any possession and access to the children and [Mother] is ENJOINED from exercising any possession of the children or having any contact with the children. IT IS EXPLICITLY ORDERED that [Mother] cannot attempt to access the children or exercise possession of the children at the children's school or attempt

to contact the children in any way unless given permission in writing by [Father].

*Motion for New Trial*

Mother timely filed a motion for new trial, asserting that the trial court's orders were unsupported by legally and factually sufficient evidence and claiming that she did not receive notice of the December 18, 2017 trial. After an evidentiary hearing, the trial court denied the motion and issued findings of fact and conclusions of law.

*Appeal*

In this appeal Mother raises three issues challenging the trial court's rulings.[2] First, she argues she failed to receive notice of the trial. Then, she complains that the trial court abused its discretion (1) in denying her rights as a possessory conservator and (2) in giving her no access to her children.

## II. ISSUES AND ANALYSIS

### A. Did the trial court err in denying Mother's motion for new trial on the ground that Mother had no notice of trial?

In her first issue, Mother argues that she had no notice of the trial setting. Mother contends that (1) she had no actual notice of the trial setting; (2) there was no constructive notice because (a) the Notice's certificate of service did not list any of the email addresses to which the Notice was sent and thus Father failed to comply with Texas Rule of Procedure 21a; (b) Mother's uncontroverted testimony that she did not receive the letters and the emails containing the Notice negates constructive notice; and (c) there was no proof that Mother engaged in selective

---

[2] The Supreme Court of Texas transferred this case from the Third Court of Appeals. In transfer cases, the transferee court must decide the appeal in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court. Tex. R. App. P. 41.3.

5

acceptance of mail or dodged service.

A failure to give notice of a trial setting is grounds for reversal, but we begin our analysis with the presumption that the trial court heard the case only after giving proper notice to the parties. *Jones v. Texas Dep't of Pub. Safety*, 803 S.W.2d 760, 761 (Tex. App.–Houston [14th Dist.] 1991, no writ); *Adekoya v. Adekoya*, No. 03-16-00195-CV, 2017 WL 3902945, at *1 (Tex. App.—Austin Aug. 24, 2017, no pet.). Mother had the burden to make an affirmative showing that she was not given notice of the trial, and to submit competent evidence showing that she had no notice. *See Boateng v. Trailblazer Health Enterprises*, L.L.C., 171 S.W.3d 481, 492 n. 4 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The trial court found that Mother had both constructive and actual notice of trial. We presume for the sake of argument that Mother did not have actual notice and we examine whether the trial court erred in denying a new trial based on constructive notice.

Rule 21a requires the party or attorney serving a notice under that rule to certify to the court compliance with the rule in writing, over signature, and on the filed instrument. Tex. R. Civ. P. 21a(e). This certificate of service is prima facie evidence of the fact of service, although a party may offer proof that the document was not received. *Id.* The record reflects that the Notice contained a certificate of service in which the attorney filing the notice certified that under Rule 21a a true and correct copy of the Notice was served on Mother on October 31, 2017. In the certificate the attorney certified that the Notice was served on Mother by regular and certified mail at two different addresses and by e-service to one email address. On appeal, Mother argues that there was no constructive notice because the Notice's certificate of service did not list any of the email addresses to which the Notice was sent and thus Father failed to comply with Rule 21a. This complaint

fails because Mother failed to preserve error in the trial court. *See Redwine v. Wright*, No. 14-10-00030-CV, 2010 WL 5238572, at *2 (Tex. App.—Houston [14th Dist.] Dec. 16, 2010, no pet.) (mem. op.). Even if Mother had preserved error, Rule 21a(e) required Father's attorney to certify to the court compliance with Rule 21a in writing, over signature, and on the filed instrument; the rule did not require the attorney to list all the addresses to which the Notice was sent. Tex. R. Civ. P. 21a(e). Based on the evidence at the motion-for-new-trial hearing, Father's attorney listed one of the two email addresses to which the Notice was sent. The failure to list both email addresses does not violate Rule 21a. *See id.*

If the Notice was filed electronically under Rule 21a and if Mother's email address was on file with the electronic filing manager, then Rule 21a required the Notice to be served electronically through the electronic filing manager. Tex. R. Civ. P. 21a(a)(1). The evidence from the motion-for-new-trial hearing reflects that Mother is an attorney and that the Notice was filed electronically under Rule 21. But, the evidence does not address whether Mother's email address was on file with the electronic filing manager. *See* Tex. R. Civ. P. 21, 21a. If Mother's email address was not on file with the electronic filing manager, then Rule 21a allowed the Notice to be served by any of the means listed in Rule 21a(a)(2), including by mail or by email. *See* Tex. R. Civ. P. 21a(a). Service by mail is complete upon deposit of the document, postpaid and properly addressed, in the mail. Tex. R. Civ. P. 21a(b)(1). Electronic service is complete on transmission to the serving party's electronic filing service provider. Tex. R. Civ. P. 21a(b)(3).

When Mother's counsel withdrew, the trial court issued an order granting the motion. In the order, the trial court found that Mother's last known email address was "jessica@jbrandonlaw.com" (the "Last Known Email Address"), and the trial court ordered that all notices in the case shall be either personally served

7

on Mother or sent to Mother at the Last Known Email Address.

When Father's attorney filed the Notice on October 31, 2017, the attorney stated that the case was set for trial on December 18, 2017. The evidence at the motion-for-new-trial hearing showed that Father served the Notice on Mother at the Last Known Email Address, both by electronic service through the electronic filing manager and by an email sent by a legal assistant at the law firm representing Father. If Mother's email address was on file with the electronic filing manager, then the evidence shows that Father served the Notice electronically through the electronic filing manager in compliance with Rule 21a and the withdrawal order. *See* Tex. R. Civ. P. 21a(b)(3). If Mother's email address was not on file with the electronic filing manager, then the evidence shows that Father served the Notice by email in compliance with Rule 21a and the withdrawal order. *See id.*

The evidence also shows that Father served the Notice on Mother at another email address (the "Other Email Address"), both by electronic service through the electronic filing manager and by an email sent by a legal assistant at the law firm representing Father. Father also sent the Notice by regular and certified mail to a post office box that Mother had listed as her address on her profile on the State Bar of Texas website, which Mother had last certified as correct on May 24, 2017. Father also sent the Notice by regular and certified mail to a business address in Austin that Mother testified she had vacated in September 2017, the month before the Notice was sent. The post office returned the regular and certified mail sent to each address with a notation showing that the mail could not be delivered or forwarded.

Mother contends that the trial court erred in finding she had constructive notice of the trial setting because she claims she testified that she did not receive the letters and the emails. At the motion-for-new-trial hearing Mother testified that

8

the last time she used the Other Email Address was in September 2017, that she got "locked out" of the Other Email Address, and that she did not have any "recovery options" on that email account. Mother testified that, as a result, she was sending emails to Father's counsel from the Last Known Email Address. According to Mother, she went to "rehab" from October 30, 2017 through November 30, 2017. Mother testified that after her children were taken away, she "lost it," became depressed, and "started arranging to go to rehab[,] and [she] left for Amarillo almost immediately." Mother agreed that because she was depressed she did not take appropriate steps to see what was going on in this lawsuit.

According to Mother, she "got cut off of access" to the Last Known Email Address in October 2017, before Father filed the Notice "because [she] needed to update the payment information on [that account] and [she] wasn't allowed any electronic access [when she was in rehab]." Mother testified that she had the Last Known Email Address reactivated in February 2018. Mother stated, "I've looked and the e-mail from the time it got shut off until I had it turned back on, I didn't receive any of the e-mail correspondence that I had gotten." According to Mother, even after the reactivation of this account, Mother did not have access to the emails sent to the Last Known Email Address during this period.

In sum, Mother testified that she did not have access to the Last Known Email Address from before October 31, 2017 through February 2018, and that even after February 2018, Mother did not have access to the emails that were sent to the Last Known Email Address. Even so, Mother did not testify that the Notice was not received at the Last Known Email Address or that all emails sent to that address during this period would have been rejected. No evidence at the motion-for-new-trial hearing showed that either of the two emails containing the Notice that were sent to the Last Known Email Address were rejected. Rule 21a(b)(3)

9

states that electronic service is "complete on transmission of the document to the serving party's electronic filing service provider." Tex. R. Civ. P. 21a(b)(3). The rule does not contemplate that electronic service is somehow incomplete when a party experiences computer or email problems. *Abuzaid v. Anani, LLC*, No. 05-16-00667-CV, 2017 WL 5590194, at *4 (Tex. App.—Dallas Nov. 21, 2017, no pet.) (mem. op.). Rather, notice properly sent under Rule 21a raises a presumption that notice was received. *See id.* Though Rule 21a(e) provides "[n]othing herein shall preclude any party from offering proof that the document was not received," Mother did not present evidence that the emails containing the Notice sent to the Last Known Email Address were not "received." *See id.*

Under the facts of this case, the trial court did not abuse its discretion in finding that Mother had constructive notice of trial.[3] *See id.*; *Nichols v. Goodger*, No. 03-16-00044-CV, 2017 WL 3122793, at *2 (Tex. App.—Austin July 20, 2017, no pet.) (mem. op.).

We overrule Mother's first issue.

## B. Is the evidence legally and factually sufficient to support the trial court's final order modifying conservatorship, possession and access?

In her second and third issues, Mother raises legal and factual sufficiency challenges to the trial court's final order modifying the conservatorship and terms of possession and access.

In determining issues of conservatorship and possession and access, the primary consideration is always the best interest of the children. *See* Tex. Fam. Code Ann. § 153.002 (West 2014); *Lenz v. Lenz,* 79 S.W.3d 10, 14 (Tex. 2002). We review a trial court's decision to modify an order regarding conservatorship or

---

[3] We presume for the sake of argument that there was no proof that Mother engaged in selective acceptance of mail or dodged service.

the terms of possession of and access to each child under an abuse-of-discretion standard. *See Baltzer v. Medina,* 240 S.W.3d 469, 474–75 (Tex. App. —Houston [14th Dist.] 2007, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Flowers v. Flowers,* 407 S.W.3d 452, 457 (Tex. App. —Houston [14th Dist.] 2013, no pet.). Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather function as relevant factors in assessing whether the trial court abused its discretion. *Id.* As long as some evidence of a substantive and probative character exists to support the trial court's decision, we will find no abuse of discretion. *Id.*

When modifying an order that provides for the appointment of a conservator of a child, as a threshold matter, the trial court must find that "the circumstances of the child, a conservator, or other party affected by the order have changed materially and substantially since the earlier of (A) the date of the rendition of the order; or (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based[.]" Tex. Fam. Code § 156.101. The trial court also must find that the modification would be in the child's best interest. Tex. Fam. Code. § 156.101. Mother does not specifically challenge the trial court's findings of materially and substantially changed circumstances. Nor does she make any specific complaint or reference to any section within Chapter 156 of the Family Code, which governs modification actions. Even so, we conclude Mother's issue is broad enough to encompass a challenge to the trial court's threshold finding. So, we address this threshold determination.

The trial evidence consisted only of Father's testimony. The trial court found Father's testimony credible, and based its findings on Father's testimony. In relevant part, the trial court found:

11

[O]ne week after September 8, 2017, [Father] observed [Mother] at a bus stop in Houston, Texas. . . [Mother] almost hit a car as she pulled approached [Father] and the children. . .[Mother's] appearance was unrecognizable to [Father]. . .[A]s she exited her vehicle and ran across the street she almost got hit by another car. . .The children were present at this event. . .[Mother] grabbed five-year old Kayla. . .[Mother] was screaming obscenities and screaming that there [was] no court order in place and that she was taking the children. . .that 911 was called. . .[T]his incident was the last time [Father] saw [Mother] in person. . ..[Mother] appeared very impaired and scared the children. . .[O]ne of the children commented that she looked like a caged animal.

[O]ne of the children is afraid each time they see a white car because at this incident [Mother] was driving a white car.

[A]t the time of the filing of the suit in September 2017, [Mother] did not have a place to live with the children. [T]he children were living in hotels with their mother.

[Mother] was using methamphetamines and living with a boyfriend who was also using methamphetamines and who was very aggressive to [Father].

[Father] drug tested the children on September 12, 2017. . .[A]ll three children tested positive for marijuana.

[I]n approximately October 2017, [Mother] was accused of pointing a weapon at someone and has been charged with a second degree felony.

[I]n September 2017 after obtaining possession of the children, [Father] observed signs of child abuse in the five year-old.

[Mother's] boyfriend sent text messages threatening physical violence to Father and his wife.

[T]he last information regarding [Mother's] living arrangements was that she was living in a tent with her boyfriend on a drug dealer's property in Bastrop, Texas. The property is known for narcotics.

[The] Hays County Sheriff's department contacted [Father] and relayed the following information to him:

- In approximately mid-November 2017, Hays County Sheriff[']s office received 5 to 6 phone calls within an hour that

12

a burglary was in progress at a home which served as a temporary residence for [Mother] and her boyfriend.

• The [S]heriff[']s department responded to the call.

• [Mother] and her boyfriend stated that the cartel was in their attic.

• The officer commented that the house was a drug den.

• The officer stated that the furniture was broken, there was trash everywhere and that [Mother] and her boyfriend were acting paranoid.

• The officer stated that [Mother] and her boyfriend stated that the work trucks were cartel members.

These findings are supported by Father's trial testimony. Father testified that Mother "lack[ed] a place to live, [was] living in hotels with [the] children," suffered from "drug abuse, [her] drug of choice being methamphetamines," and was in a relationship with someone who used and sold drugs. Father further testified that Mother had become homeless, and Father recounted a conversation he had with his son that suggested that, for extended periods of time, Mother could not provide the children a place to bathe.

We conclude that the trial court did not abuse its discretion in finding a material and substantial change in the circumstances of Mother and the children since the trial court rendered its order in the previous modification suit on June 23, 2015. *See In re A.L.E.*, 279 S.W.3d 424, 429 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (concluding changed circumstances of conservator's drug-abuse problems significantly and negatively affecting the child were adequate to modify conservatorship and impose restrictions on access).

**1. Is the evidence legally and factually sufficient to support the trial court's modification removing Mother as a joint managing conservator and declining to appoint her as a possessory conservator?**

In her second issue, Mother asserts that the trial court erred in removing her

13

as a joint managing conservator and in failing to appoint her as a possessory conservatory because the trial evidence is legally and factually insufficient to support these actions. We consider the legal and factual sufficiency of the evidence to show that these modifications were in the children's best interest. *See* Tex. Fam. Code. § 156.101.

The child's best interest holds paramount importance in making any custody call. *See* Tex. Fam. Code Ann. § 153.002 (West 2014); *In re V.L.K.,* 24 S.W.3d 338, 342 (Tex. 2000). Texas courts are to look to the following non-exhaustive list of factors to determine the children's best interests: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by the individuals seeking custody; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976); *In re H.D.C.,* 474 S.W.3d 758, 766–67 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

*Removal from Joint Managing Conservator Status*

Mother asks us to consider the best-interest factors found in section 153.134(a), which addresses a trial court's original decision as to whether both parents should be appointed in the first instance as joint managing conservators. *See* Tex. Fam. Code § 153.134(a). Under this statute, if a written agreed parenting plan is not filed with the court, the court may render an order appointing the parents joint managing conservators only if the appointment is in the best interest of the child, considering the following factors: (1) whether the physical,

14

psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators; (2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest; (3) whether each parent can encourage and accept a positive relationship between the child and the other parent; (4) whether both parents participated in rearing the child before the filing of the suit; and (5) the geographical proximity of the parents' residences. *See id*.

Modification proceedings, however, are governed by Family Code Chapter 156, not Chapter 153. *Cf. In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000) ("Chapter 153 and Chapter 156 are distinct statutory schemes that involve different issues."). But, because the *Holley* factors are not exclusive, 544 S.W.2d at 371–72, courts also may consider the section 153.134(a) factors in determining the best interest of the child in a modification case. *See In re J.S.*, No. 05- 16–00138–CV, 2017 WL 894541, at *3 (Tex. App.—Dallas Mar. 6, 2017, no pet.) (mem. op.); *Caldwell v. Garfutt*, No. 03–14–00019–CV, 2016 WL 105920, at *5 (Tex. App.–Austin Jan. 7, 2016, pet. denied) (mem. op.). Mother complains that the evidence before the trial court was "thin"; she asserts that the section 153.134(a) factors show that Mother should not have been removed from her status as a joint managing conservator.

The children did not testify. Father did not report any statements made by the children reflecting their desires, if any, to see Mother. He reported facts suggesting that one of the children was afraid of Mother. Father's testimony provided little information about his own parenting abilities and no specific details about the stability of his own home. Father offered few details about the programs available to assist the children, other than play therapy, which Father indicated would be discontinued as unnecessary because the children are doing well. Father testified that the children have been doing well academically since the trial court's

temporary-orders hearing.

The balance of Father's testimony relates to Mother's acts and omissions, the lack of stability of Mother's home, Mother's inability to provide suitable housing, and facts that relate to the emotional and physical danger to the children now and in the future. Mother exhibited behavior reflective of an inability to give first priority to the welfare of the children and to reach shared decisions in the children's best interest (e.g., scaring the children in an apparent attempt to abduct at least one of the children at the bus stop); and an inability to encourage and accept a positive relationship between her children and Father (e.g., associating with an individual who allegedly sent text messages threatening physical violence to Father and his wife), and Father's residence (in Houston) is not geographically close to the places Mother was known to reside (Round Rock, Austin, Bastrop, and Amarillo). Under both the *Holley* factors and the section 153.134(a) factors, the record contains at least some evidence of a substantive and probative character to support the trial court's implied finding that removing Mother as a joint managing conservator and naming Father as sole managing conservator was in the children's best interest. *See Zewde v. Abadi*, 529 S.W.3d 189, 196–97 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *In re B.J.W.S.*, 14-08-01154-CV, 2010 WL 4396291, at *7 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.) (affirming appointment of mother as sole managing conservator and appointing father as possessory conservator was not an abuse of discretion upon finding that father had been diagnosed with serious mental conditions and refused treatment, that he had twice endangered child's health and safety by permitting child to jump off a rocky fountain and by leaving child alone in the car.)

We overrule Mother's challenge to the trial court's removal of Mother as a joint managing conservator.

16

*Denial of Possessory-Conservatorship Appointment*

Under Texas Family Code section 153.191, the trial court found that appointing Mother as a possessory conservator is not in the best interest of the children and that parental possession of or access to the children by Mother would endanger the physical or emotional welfare of the children. *See* Tex. Fam. Code Ann. § 153.191. The trial court also found that if [Mother] were allowed access, the children would be "at risk of being abused, not having proper living arrangements and at risk of abduction." Section 153.191, entitled "Presumption that Parent to be Appointed Possessory Conservator," provides that a court:

> shall appoint as a possessory conservator a parent who is not appointed as a sole or joint managing conservator unless it finds that the appointment is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child.

*Id.*

Unless limited by a court order, a parent appointed as a possessory conservator of a child at all times has the rights listed in Family Code section 153.073(a). *See* Tex. Fam. Code Ann. §§ 153.073, 153.192. Conversely, no statute provides these rights to a parent not appointed as a managing or a possessory conservator. *See* Tex. Fam. Code §§ 153.073, 153.075; *In re I.L.*, 04-18-00742-CV, 2019 WL 1549914, at *2 (Tex. App.—San Antonio Apr. 10, 2019, no pet.). Nonetheless, under appropriate circumstances a trial court has discretion to appoint a parent as a possessory conservator and to deny the parent possession of and access to the children. *See In re F.A.*, No. 02-16-00156-CV, 2017 WL 632913, at *2–6 (Tex. App.—Fort Worth Feb. 16, 2017, no pet.) (mem. op.). Presuming, without deciding, that the evidence supports the trial court's finding that parental possession of or access to the children by Mother would endanger the

physical or emotional welfare of the children, we consider whether the record contains legally and factually insufficient evidence to support the trial court's finding that appointing Mother as a possessory conservatory would not be in the children's best interest. *See* Tex. Fam. Code §153.191. We focus on the possessory-conservator rights that are unrelated to access and possession and that Mother lost because she was not named a possessory conservator. *See* Tex. Fam. Code §153.073(a)(1),(2),(4),(5).

These rights include the right to receive information from Father concerning the children's health, education, and welfare; the right to confer with Father to the extent possible before Father makes a decision concerning the children's health, education, and welfare; the right to consult with the children's physicians, dentists, and psychologists; and the right to consult with school officials concerning the children's welfare and educational status, including school activities (collectively, the "Informational Rights"). *See id.*

The trial court's finding that Mother's parental possession of or access to the children would endanger the children's physical or emotional welfare is not inconsistent with the trial court appointing Mother to be a possessory conservator because the trial court has discretion in appropriate circumstances to order that Mother not have possession of or access to the children, even though she is a possessory conservator. *See In re F.A.*, 2017 WL 632913, at *2–6. Nothing in the record addresses why these options would not have sufficed. Nor does any other record evidence suggest circumstances that would warrant denying Mother the Informational Rights.

We conclude that the trial court abused its discretion in finding that appointing Mother as a possessory conservatory is not in the children's best interest. *See In re I.L.*, 2019 WL 1549914, at *2, 13. We would reach this

conclusion whether or not section 153.191 applies to conservator decisions in a modification action; therefore, we need not and do not address whether section 153.191 applies in this case. We sustain Mother's second issue to the extent it relates to her non-appointment as a possessory conservator.

**2. Is the evidence legally and factually sufficient to support the trial court's complete denial of Mother's access to the children?**

Under her third issue, Mother challenges the trial court's complete denial of possession of or access to her children. We consider whether, regardless of her status as a conservator, the trial court abused its discretion in denying Mother all possession and access.

The order unequivocally commands that Mother "shall not have any possession and access to the children and [Mother] is enjoined from exercising any possession of the children or having any contact with the children." But the order also includes language that would suggest the possibility of access — providing that Mother may "attempt to access the children or exercise possession of the children at the children's school or attempt to contact the children" if given "permission in writing by [Father]." The law decries this type of provision that gives Father unbridled discretion to decide whether Mother gets access to the children. *See Roosth v. Roosth*, 889 S.W.2d 445, 452 (Tex. App.-Houston [14th Dist.] 1994, writ denied) (a trial court may not give one parent the unbridled discretion, unenforceable by contempt, to decide whether the other parent may have access to, or possession of, her children).

The terms of any order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child "may not exceed those that are required to protect the best interest of the child." Tex. Fam. Code §153.193. So, in deciding whether the trial court abused

its discretion, we must consider whether the restrictions exceeded what was required to serve the children's best interest.

Even when courts strip parents of important parental rights, the law permits courts to order a complete denial of possession of and access to a parent's children only in extreme circumstances. *Tran v. Nguyen*, 480 S.W.3d 119, 125–26 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *In re Cassey D.*, 783 S.W.2d 592, 596–97 (Tex. App.—Houston [1st Dist.] 1990, no pet.). Recognizing that some cases raise serious concerns surrounding possession of and access to children, the Family Code gives trial courts leeway to tailor orders on these matters to suit the unique circumstances and potential risks a parent may present to the children's welfare. *See In re P.A.C.*, 498 S.W.3d 210, 220 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (no abuse of discretion to place restrictions on possession and require visitation remain supervised when mother's mental health status was "uncertain," coupled with concerns that mother would not follow court orders and might damage children emotionally by demeaning their father when alone in her custody). Reviewing courts have upheld the complete denial of possession of or access to a child in cases in which the parent committed sexual abuse or the record contained evidence of a risk that the parent would commit sexual abuse in the future. *See In re F.A.*, 2017 WL 632913, at \*2–6; *Tran*, 480 S.W.3d at 126–27; *In re Marriage of Bonner*, 10-10-00011-CV, 2010 WL 4409704, at \*2 (Tex. App.—Waco Nov. 3, 2010, no pet.) (mem. op.).

The trial court found that "[i]n September 2017 after obtaining possession of the children, [Father] observed signs of child abuse in the five year-old." The finding is based on this testimony from Father:

> when this Court ordered that I had possession, my daughter, which this prompted a CPS [Children's Protective Services] case that there was reason to believe when it closed, a huge bruise on her face,

20

bruises on her thighs as if she was – I just assumed she was hit or smacked. She's a little — she's five years old. She definitely showed signs of abuse.

Past child abuse could be so detrimental to a child's emotional well-being as to warrant severe restrictions. In today's case, the record contains no evidence of any conviction or even charges made in reference to the "signs of child abuse" mentioned in the trial court's findings. The testimony lacks clarity about the conclusions in the CPS case and fails to identify Mother as the potential abuser. *See In re E.N.C.*, 03-07-00099-CV, 2009 WL 638188, at *21 (Tex. App.—Austin Mar. 13, 2009, no pet.) (reversing complete denial of access where there was evidence mother had been romantically involved with abusive partners, remained in abusive relationship after being abused, failed to protect child from family violence, and child had been abused on several occasions) (mem. op.); *Ohendalski v. Ohendalski*, 203 S.W.3d 910, 915–16 (Tex. App.—Beaumont 2006, no pet.) (affirmed order deviating from standard possession order (allowing possession and access) despite a finding of a history of chronic alcohol abuse and terrorizing one or more of the children by operating a vehicle while under the influence when the children were passengers); *Hopkins v. Hopkins*, 853 S.W.2d 134, 138 (Tex. App.– Corpus Christi 1993, no writ) (affirming order giving father two hours of supervised visitation every other week; father had been convicted of drug delivery, used drugs in front of children, severely abused mother and threatened her with gun, hit older child, neglected children, denied treatment to child who suffered head injury while in father's care, kept extremely unsanitary house, and behaved erratically).

The trial court also found that Mother scared the children when she allegedly sought to remove one of the children from Father's physical possession shortly after the trial court issued the temporary orders. Father testified that one of the

21

children has developed a fear of white cars because Mother was driving a white car at the time of the incident. There was no independent testimony from a therapist or other professional addressing the issue. According to Father, at the time of the final hearing, the children were well adjusted and their therapist recommended that they discontinue therapy.

Nothing in our record indicates that any of the children ever suffered any sexual abuse or that Mother's contact with the children would expose them to sexual abuse. The record contains some evidence that Mother may have exposed the children to marijuana while they were in her possession. The record contains little evidence about Mother's parenting ability as a single mother for the years leading up to 2017. Until that point, the children had lived with Mother for their entire lives. Just months after they left Mother's custody, a therapist described the children as not needing therapy.

Most concerns for a child's well-being, including those that would militate against allowing a parent unsupervised periods of possession and access to a child can be addressed through court-ordered restrictions on visitation. The trial court made a finding that Mother's boyfriend threatened violence toward Father and Father's wife, and that Mother had been charged for pulling a weapon on someone. The trial court also found that Father spoke to an unidentified officer of the Hays County Sheriff's Department who reported to Father that Mother and her boyfriend had told him "that the cartel was in their attic" and that "the work trucks [on the property where the officer found them] were cartel member[']s." The trial court did not make clear whether this finding was meant to suggest Mother was entangled with a dangerous criminal organization, or that she was abusing narcotics or to show that she had a detachment from reality, paranoia, or other mental instability. Even so, we cannot extract from any of this evidence a legally

sound basis for concluding that security and physical safety concerns could not be addressed though appropriate measures short of a complete denial of possession and access. *See In re C.L.J.S.*, 01-18-00512-CV, 2018 WL 6219615, at *5 (Tex. App.—Houston [1st Dist.] Nov. 29, 2018, no pet.) (mem. op.).

The trial evidence does not show parental unfitness so extreme that even supervised or limited parental contact or visitation would go against the children's best interest. *See id.* In light of the various means available to create a controlled, safe visitation environment, we conclude that the trial court abused its discretion by denying Mother all possession of and access to the children. *See id.* (stating that "[w]hen, as here, there has not been a showing of parental unfitness so extreme as to render even limited parental contact or visitation against the child's best interest, the total and indefinite denial of parental access is improper."); *Fish v. Lebrie*, 03-09-00387-CV, 2010 WL 5019411, at *10 (Tex. App.—Austin Dec. 10, 2010, no pet.) (reversing order denying father access, holding "that the trial court abused its discretion in entering an order not supported by the kind of evidence that would allow for a complete denial of access.) (mem. op.); *In re E.N.C.*, 03-07-00099-CV, 2009 WL 638188, at *21 (Tex. App.—Austin Mar. 13, 2009, no pet.) (reversing complete denial of access where the record contained evidence mother had romantic involvement with abusive partners, remained in abusive relationship after being abused, failed to protect child from family violence, and child had been abused on several occasions) (mem. op.).

The record does not support the trial court's implicit finding that this denial of all access did not exceed what was required to protect the children's best interests. *See* Tex. Fam. Code §153.193. Accordingly, we sustain Mother's third issue to the extent she challenges the trial court's denying Mother all possession of and access to the children.

### III. Conclusion

The trial court did not abuse its discretion in denying Mother's motion for new trial in which she asserted that she had no notice of the trial setting. The record supports the trial court's implied finding that the circumstances of the children, conservator, or other party affected by the previous order materially and substantially changed. The record evidence supports the trial court's removal of Mother as a managing conservator.

The trial court abused its discretion in finding that appointing Mother as a possessory conservatory is not in the best interest of the children, in failing to appoint Mother as a possessory conservator, and in denying Mother all possession of and access to the children. So, we reverse all parts of the trial court's final order in which the trial court fails to appoint Mother as a possessory conservator, rules that Mother should not be a possessory conservator, or denies Mother all possession of or access to the children. We remand this case to the trial court with instructions to issue a new order in which the trial court appoints Mother as a possessory conservator and grants Mother the amount of possession or access (including any appropriate restrictions) that is in the children's best interest.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Jewell and Bourliot.

24